**TEMPLE UNIVERSITY**

v.

**UNITED STATES of America.**

**Civ. A. No. 83–5549.**

United States District Court,
E.D. Pennsylvania.

June 29, 1984.

Robert R. Batt, Philadelphia, Pa., for plaintiff (appellant).

Dawn MacPhee, Asst. U.S. Atty., Philadelphia, Pa., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael J. Kearns, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant (appellee).

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

The parties have submitted cross motions for summary judgment contending there are no remaining issues of fact to be decided.

The specific issue in this case is whether the amounts of voluntary employee salary reductions for the years 1979 to 1982 used to purchase tax deferred annuities for the employees constitute "wages" for Social Security tax purposes, subject to the Federal Insurance Contribution Act ("FICA").

## FACTS

Temple University is a non-profit educational organization described in section 501(c)(3) of the Internal Revenue Code ("Code") and exempt from federal income tax under section 501(a) of the Code. Pursuant to its section 501(c)(3) status, Temple was permitted to establish a salary reduction retirement annuity plan of the type described in section 403(b) of the Code. This plan was in effect both before, during and after the period at issue in this case, 1979 through 1982 inclusive.

Under the plan, employees electing to participate enter into salary reduction agreements under which they agree to stated reductions in their salary for the purpose of funding in part the purchase of nonforfeitable, nontransferable annuity contracts on the employees' behalf. The salary reduction agreement applies only to amounts earned by the participating employee subsequent to the effective date of the agreement, and only one such agreement may be executed by each employee during any year. The agreement is legally binding and irrevocable with respect to amounts earned while the agreement is in effect. In this plan, Temple's total contribution for the purchase of section 403(b) annuities exceeds the total salary reduction amounts. Temple has made no claim with respect to the amount contributed that exceeds the employees' salary reduction amount.

Pursuant to section 403(b) of the Code the amount contributed by Temple for the purchase of section 403(b) annuities for a participating employee's account is excludible from the employee's gross income for federal income tax purposes. No withholding of federal income tax by Temple is required with respect thereto.

Pursuant to Revenue Ruling 65–208, 1965–2 Cumulative Bulletin 383, Temple timely paid to the Internal Revenue Service employer FICA taxes and withheld and paid employee FICA taxes in accordance with sections 3111 and 3101 of FICA, respectively, with respect to the salary reduction amounts applied by Temple toward the purchase of section 403(b) annuities during the years 1979 through 1982, inclusive.

On April 12, 1983, subsequent to the decision of the U.S. Supreme Court in *Rowan Companies v. U.S.*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), Temple timely filed claims for refund of employer and employee FICA taxes for each of the years 1979 to 1982, inclusive, together with statutory interest thereon, on behalf of itself and those of its employees and former employees from whom it had withheld

FICA taxes with respect to salary reduction amounts in those years.[1]

Section 3121(a) of the Internal Revenue Code defines "wages" for purposes of FICA. However, salary reduction agreements are not encompassed by section 3121(a) which provides amounts paid by an employer for the purchase of tax deferred annuities on behalf of its employees' retirement are not considered wages subject to FICA tax. In Revenue Ruling 65–208 the Internal Revenue Service has taken the position that the salary reduction portion of an employes contributions are wages for FICA purposes.[2] And, prior to the Supreme Court's decision in *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), it was universally held that amounts used to purchase deferred annuities for employees of Section 501(c)(3) organizations were considered wages subject to FICA tax to the extent the payments were made pursuant to salary reduction agreements. Rev.Rul. 65–208, 1965–1 C.B. 383. This result obtained because the amounts used to purchase the annuities were provided by the employees through their voluntary salary reduction, and were not funds of the employer. Thus, during the years in question, Temple University withheld FICA taxes on its payments to purchase deferred annuities on behalf of its employees. Based on *Rowan* plaintiff claims that payments to purchase annuities on behalf of its employees, made as a result of salary reduction agreements, are excluded from FICA taxation, regardless of the fact that the purchase of the annuities is pursuant to salary reduction agreements. I believe this to be a distinction without a difference.

Temple contends that *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981) is controlling. I disagree. In *Rowan*, the Court held that meals and lodging provided by an employer for its own convenience did not constitute "wages" for FICA purposes. However, in reaching its decision the Court noted that such meals and lodging were specifically excluded from taxable income under 26 U.S.C. § 119, and that consistent treatment should result under both the income tax withholding provisions and the FICA tax provisions. Since the meals and lodging were not subject to income tax, the Court concluded that they must also be excluded from the term "wages" for FICA tax purposes.

The Supreme Court in *Rowan* stated that Congress intended a consistent interpretation of the term "wages" for income tax withholding and FICA purposes, and it struck down a Treasury Regulation which did not interpret FICA wages "in a consistent or reasonable manner."

The *Rowan* decision was based on the Court's interpretation of congressional intent. If the Government's interpretation of FICA wages "implements the congressional mandate in some reasonable manner" then it should be upheld. *Rowan*, 452 U.S. at 252, 101 S.Ct. at 2292. In determining whether the congressional mandate is being implemented, the court must focus, *inter alia*, on "the degree of scrutiny Congress has devoted to the regulation." *Id.* at 253, 101 S.Ct. at 2293.

I find Rev.Rul. 65–208 to be a reasonable implementation of the Congressional mandate since it results in consistent tax treatment of "wages".

Temple argues that Rev.Rule 65–208 is contrary to the express command of Congress. I believe plaintiff is incorrect. In the Social Security Amendments of 1983,

---

**1.** In conformity with Treas.Reg. ¶ 31.6402(a)–2, all of the said employees and former employees were notified by Temple of their possible right to refund of FICA taxes and were furnished consent forms on which to indicate their consent to inclusion in Temple's refund claims. Exhibits 5, 6, 7 and 8 to the Complaint indicate which employees and former employees gave such consents.

**2.** Section 3121(a)(5)(E) specifically provides that payments made after December 31, 1983, to purchase Section 403(b) annuities pursuant to salary reduction agreements are wages subject to taxation for FICA purposes.

P.L. 98–21, Congress discussed the potential impact of the *Rowan* decision, and decided to codify the result of Rev.Rul. 65–208. As a result, Section 3121(a)(5)(E) was added to the Internal Revenue Code, and provides wages for FICA proposes *excludes:*

> (5) any payment made to, or on behalf of, an employee or his beneficiary—
>
>     \*      \*      \*      \*      \*      \*
>
> (E) under or to an annuity contract described in Section 403(b), *other than a payment for the purchase of such contract which is made by reason of a salary reduction agreement* (whether evidenced by a written instrument or otherwise) (emphasis added).

Under the Social Security Amendments of 1983, therefore, payments by an employer for the purchase of Section 403(b) annuities which are made under salary reduction agreements are *included* in wages under FICA.[3] Additionally, Section 3121(a) was amended to include the following language:

> Nothing in the regulations prescribed for purposes of chapter 24 (relating to income tax withholding) which provides an exclusion from "wages" as used in such chapter shall be construed to require a similar exclusion from "wages" in the regulations prescribed for purposes of this chapter.[4]

Thus, in enacting the Social Security Amendments of 1983, Congress codified Rev.Rul. 65–208, and specifically rejected the language in *Rowan* that the term "wages" had to be interpreted the same for income tax withholding and FICA purposes.

The legislative history of the Social Security Amendments of 1983 reflects the long standing congressional intent to narrowly restrict the forms of compensation which are excluded from the FICA wage base, and further indicates support for the Service's position embodied in Rev.Rul. 65–208. According to the Senate Report:

> Under case or deferred arrangements, certain tax-sheltered annuities, certain cafeteria plans, and eligible State deferred compensation plans, the employer contributes funds which are set aside by individual employees for individual savings arrangements, and thus, the committee believes that such employer contributions should be included in the FICA base, as is the case for IRA contributions. Otherwise, individuals could, in effect, control which portion of their compensation was to be included in the social security wage base. This would make the system partially elective and would undermine the FICA tax base.[5]

In discussing the specific reason for adding Section 3121(a)(5)(E) the Senate Report states:

> The bill also provides that any amounts paid by an employer to a tax-sheltered annuity by reason of a salary reduction agreement between the employer and the employee would be includible in the employee's social security wage base. *The committee intended that the provision would merely codify the holding of Revenue Ruling 65–208, 1965–2 Cum.Bull. 383,* without any implication with respect to the issue of whether a particular amount paid by an employer to a tax-sheltered annuity is, in fact, made by reason of a "salary reduction agreement". (Emphasis added).

*Id.* at 41.

Finally, the Senate Report states with respect to the *Rowan* decision that:

> The social security program aims to replace the income of beneficiaries when

---

**3.** Section 3121(a)(5)(E), cited above, was added by Section 324(a)(2) of P.L. 98–21, and was made effective with respect to remuneration paid after December 31, 1983. As discussed below, there is currently pending a technical correction to the effective date provisions of the Social Security Amendments of 1983 which, if passed, would ensure the same result in the instant case.

**4.** This language was added by Section 327(b)(1) of the Social Security Amendments of 1983, P.L. 98–21, and was made effective with respect to remuneration paid after December 31, 1983.

**5.** S.Rep. No. 98–23, 98th Cong., 1st Sess. 40, reprinted in [1983 No. 2] U.S.Code Cong. & Ad.News 143, 181.

that income is reduced on account of retirement and disability. Thus, the amount of "wages" is the measure used both to define income which should be replaced and to compute FICA tax liability. Since the security system has objectives which are significantly different from the objective underlying the income tax withholding rules, the committee believes that amounts exempt from income tax withholding should not be exempt from FICA unless Congress provides an explicit FICA tax exclusion.

*Id.* at 42, U.S.Code Cong. & Admin.News 1983, p. 183.

An appropriate Order follows.

### ORDER

AND NOW, this 29th day of June, 1984, for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that:

1. Plaintiff's Motion for Summary Judgment is DENIED.

2. Defendant's Motion for Summary Judgment is GRANTED.